# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR408-228 |
| ) | |
| TYRONE HARRIS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Tyrone Harris, who is charged with possession of a firearm by a felon, has filed a motion to suppress evidence. (Docs. 11, 26.) The Court held a hearing on these matters, at which time the government offered testimony from Detective Rufus Brown, a member of the Tactical Response and Prevention ("TRAP") unit of the Savannah-Chatham Metropolitan Police Department. Harris did not testify. For the following reasons, his motion to suppress should be **DENIED**.

## I. BACKGROUND

On July 1, 2008, Detective Brown and other members of the TRAP team were patrolling Yamacraw Village, a public housing community in downtown Savannah, in an unmarked white van. They noticed that a number of individuals had congregated on the front porch of Apartment 261, a location suspected for drug activity due to reports from beat officers who had noticed heavy foot traffic in and out of the residence. Detective Brown, who was wearing plain-clothes and had his badge displayed on a lanyard around his neck, exited the van and approached the yard in front of the apartment. He noted that there were three individuals on the porch and that another male was seated on a couch in the yard. Detective Brown announced to the group that he was a member of the TRAP unit of the police department and that he had stopped there to investigate reported drug activity in the area. When he asked who lived in the apartment, a female on the porch stated that her relatives lived there. Defendant Harris, who was seated on the porch, acknowledged that he did not live there. Because none of the individuals claimed to live at the residence, Detective Brown requested that they each produce identification. In response, Harris began to reach behind

2

his back. Apprehensive that Harris may have been retrieving a weapon, Detective Brown told Harris to wait and asked him if he had anything illegal in his possession. Harris promptly stated that he had some "weed," and he opened his hand to reveal a marijuana blunt. Detective Brown then stepped onto the porch and directed Harris to stand up and hand him the marijuana. When Harris stood, Detective Brown noticed a plastic bag of a white rock-like substance, which Harris had been sitting on and which Detective Brown suspected was a bag of crack cocaine. At this point, Brown escorted Harris to a patrol car, where he was handcuffed, placed under arrest, and transported to jail. While Harris was being booked at the jail, an officer discovered a handgun in his possession that had not been detected during the post-arrest frisk. That weapon forms the basis of this prosecution.

## II. ANALYSIS

In his motion, Harris offers only the general contention that "evidence will be sought to be admitted against him by the Government

that is subject to suppression." (Doc. 11 at 3.) No factual averments or legal authorities were offered in support of the motion.[1]

At the hearing, the Court questioned defense counsel in an effort to clarify the legal grounds and factual assertions upon which he believed suppression was warranted. Initially, defense counsel argued that Detective Brown should have advised Harris of his <u>Miranda</u> rights before asking him whether he had anything illegal on his person. <u>Miranda v.</u>

---

[1] Although Harris suggested that he would supplement his motion and "make it more definite and certain following discovery" (doc. 11 at 3), no such supplement was ever filed. Ordinarily, the Court will not consider an unparticularized motion to suppress, for a defendant is not entitled to an evidentiary hearing unless he alleges facts that, if proved, would require the grant of relief. <u>United States v. Richardson</u>, 764 F.2d 1514, 1527 (11th Cir. 1985). "A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented . . . . A court need not act upon general or conclusory assertions . . . ." <u>Id.</u> at 1527 (internal citations omitted). Nor are defendants entitled to an evidentiary hearing based on some assurance "to prove at the hearing that which they did not specifically allege in their motion to suppress." <u>United States v. Cooper</u>, 203 F.3d 1279, 1285 (11th Cir. 2000); <u>see</u> L. Cr. R. 12.1 ("where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted"). These principles apply with particular force where, as here, defendant's motion not only offers no supporting facts but furnishes no clue whatsoever as to the legal basis for suppression. It is difficult, if not impossible, for the government to respond to such a motion or prepare for a suppression hearing, for without knowledge of a defendant's specific contentions, the government can only guess as to what witnesses to call or what evidence it should be prepared to meet at the hearing. Despite the deficiencies of defendant's motion, the government filed a response in opposition and addressed several potential issues it suspected defendant might raise if the Court proceeded with a hearing, although the government made clear that it was not waiving its objection that no hearing was required. As the government stated that it was prepared to present witnesses and argument at the hearing, the Court allowed the hearing to proceed.

Arizona, 384 U.S. 436 (1966). The protections afforded under Miranda, however, only apply in situations involving custodial interrogation. Id. at 471. Here, defendant was not placed in custody until after he showed Detective Brown the marijuana in his possession. As a result, the Miranda doctrine would not apply to the questions posed by Detective Brown prior to that admission. Additionally, defense counsel argued that defendant's statements were not made voluntarily. Some form of government coercion is essential to a finding of involuntariness, however. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Nothing presented in the record or at the hearing suggests that Detective Brown used threats, physical violence, bribes, promises, or intimidation tactics to coerce a response from defendant. The ultimate focus of the hearing was whether Detective Brown effected some sort of suspicionless seizure of defendant when he approached the apartment and began asking questions of those present on the porch.

The law is well settled that law enforcement officers do not offend the Fourth Amendment merely by approaching a citizen on the street and asking him questions or requesting consent to search his person or possessions. Florida v. Bostick, 501 U.S. 429, 434-35 (1991); Florida v.

Rodriguez, 469 U.S. 1, 5-6 (1984); Florida v. Royer, 460 U.S. 491, 497 (1983); see also United States v. Berry, 670 F.2d 583, 590-91 (5th Cir. Unit B 1982) (en banc). The Constitution does not discourage such cooperation on the part of citizens, and as long as the police do not convey the message that compliance with their request for information is required, no Fourth Amendment interest is implicated when an officer simply approaches and poses questions to a citizen. Bostick, 501 U.S. at 435. In every case the test is whether, taking into consideration all of the circumstances surrounding the encounter, "a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." Id. at 436.

There was no use of force or assertion of authority by Detective Brown in this case but simply a request for Harris' cooperation. The fact that Detective Brown was wearing a badge and identified himself as a law enforcement officer, without more, did not convert the encounter into a seizure. Royer, 460 U.S. at 497. Nor did Detective Brown's demeanor or his inquiries imply that the Harris had been seized. No evidence was presented to suggest that Detective Brown's approach was threatening or coercive in nature; for instance, there was no evidence

that he displayed a weapon, blocked any exit or pathway, or physically touched anyone prior to Harris' admission that he possessed drugs on his person. Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006). When Brown approached the apartment he did not set foot on the porch but remained in the yard while he explained that he was investigating reports of drug activity and made inquiries as to which, if any, of the individuals lived in the apartment.[2] His request that the individuals produce identification likewise did not transform the encounter into a seizure. See United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006) ("Officers are free, without any level of suspicion, to approach citizens . . . [and] request proof of identification . . . ."); United States v. Neal, 2006 WL 572129, at *2 (W.D. Pa. March 7, 2006) ("even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions and ask for identification, provided they do not induce cooperation by coercive means"). Finally, the detective's inquiry

---

[2] Detective Brown entered the porch only after Harris revealed the marijuana in his possession, at which point Brown clearly had probable cause to detain and arrest Harris for possession of a controlled substance. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense"); United States v. Gonzalez, 969 F.3d 999, 1002 (11th Cir. 1992) ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.").

7

as to whether Harris possessed any illegal items did not result in a Fourth Amendment "seizure," for an officer is free to ask such a question of any citizen. The fact that the question was made for safety purposes did not convert the encounter into a seizure. "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations," Allen v. City of Los Angeles, 66 F.3d 1052, 1056-57 (9th Cir. 1995) (citing United States v. Jacobs, 715 F.2d 1343, 1345-46 (9th Cir. 1983)), even during police-citizen encounters. See United States v. Bond, 829 F.3d 1072, 1074-75 (11th Cir. 1987). Detective Brown simply asked Harris whether he had anything illegal in his possession as he began to reach behind him (purportedly to retrieve his identification). This was a reasonable question to ensure the officer's personal safety. In response, Harris freely admitted that he possessed marijuana. Detective Brown did not prod, much less command, defendant to offer any response. See Royer, 460 U.S. at 497 ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in

evidence in a criminal prosecution his voluntary answers to such questions").

This is the type of police-citizen encounter that simply does not trigger Fourth Amendment scrutiny. Thus no level of suspicion was required before the detective engaged Harris in a conversation that led to his voluntary disclosure that he had marijuana on his person. This revelation furnished grounds for Harris' arrest, which resulted in the discovery of the firearm.

III. **CONCLUSION**

For all of the reasons explained above, Harris' motion to suppress should be **DENIED**. (Doc. 11.)

**SO REPORTED AND RECOMMENDED** this <u>18th</u> day of December, 2008.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**